IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TODD A. JOHNSTON, et al., | ) | CASE NO. 5:14-CV-466 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| MIDFIRST BANK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on a Partial Motion for Summary Judgment filed by

Plaintiffs, Todd and Tracy Johnston (ECF #52) and Motions for Summary Judgment filed by

Defendants MidFirst Bank ("MidFirst")(ECF #50) and Midland Mortgage Company

("Midland")(ECF #51).  Several reply and surreply briefs were filed by the parties (ECFs #53-56;

58-61) and the issues are fully briefed.  As outlined below, this Court rules as follows:

-Plaintiffs' Motion for Partial Summary Judgment is DENIED;

-Defendant MidFirst Bank's Motion for Summary Judgment is GRANTED; and

-Defendant Midland Mortgage Company's Motion for Summary Judgment is GRANTED.

I.    FACTUAL AND PROCEDURAL HISTORY

The Plaintiffs purchased property located at 1704 King Drive, Uniontown, Ohio 44685 (the

"property") in 1992, using a loan from Charter One Bank (ECF #50, p. 1).  This property has been

the subject of three prior foreclosure actions in the Summit County Court of Common Pleas while

owned by Plaintiffs, the relevant facts of each are stated herein:[1]

1.  July 15, 1996: foreclosure filed by Charter One Bank. The Plaintiffs filed a petition for protection under Chapter 13 on December 13, 1996 and plaintiffs were able to remain in their home. (ECF #50-3).

2.  April 29, 1999: second foreclosure filed by Charter One Bank. On December 23, 1999, Plaintiffs obtained a loan (hereafter the "1999 loan") from First Financial Mortgage Corporation ("First Financial") to pay off the Charter One note. On this date, Plaintiffs signed a promissory note and mortgage indicating their promise to repay First Financial, as well as "its successors and assigns" $129,850.00. (ECF# 58-1). The parties have stipulated that also on December 23, 1999, this mortgage was assigned to Defendant MidFirst Bank and serviced by Defendant Midland Mortgage Company. (ECF #47-1, ¶6). This second foreclosure action was dismissed on January 10, 2000. (ECF #50-4).

3.  May 6, 2003: third foreclosure filed by Mortgage Electronic Registration Systems, Inc. (MERS). (ECF #50-7). Plaintiffs executed a loan modification agreement with Washington Mutual Bank ("Washington Mutual") which increased the original principal balance of the loan to $137,591.72. (ECF #47-1, ¶7). This third foreclosure action was dismissed on October 19, 2004.(ECF #50-7).

As is common in the banking and loan industry, Plaintiffs' note and mortgage were transferred among various entities after the third foreclosure. The parties stipulate that on October 27, 2006, Washington Mutual transferred the right to service the note and mortgage to MidFirst, who then transferred the right to sub-service the note and mortgage to Midland. (ECF #47-1, ¶¶12-13). Also on this date, Washington Mutual sold the loan to Massachusetts Mutual Insurance Company ("Massachusetts Mutual")(Id. at ¶9). Prior to selling the loan to Massachusetts Mutual, Washington Mutual had filed a "Lost Note Affidavit" indicating that it

---

[1] This Court will refer to Exhibits and other records by using the assigned ECF number from the docket in this case.

had lost the original promissory note for the loan which was executed in 1999. (Id. at ¶11).[2]

However, the parties have also stipulated that Defendants Midfirst and Midland had access to

the lost note affidavit at the time the foreclosure action was filed and at all times thereafter. (Id.

at ¶¶23 and 24).

This Court will now address the issues relating to the fourth foreclosure action, which

was filed by Midfirst on December 31, 2008. (Id. at ¶17).  Plaintiffs claim that soon after

Midland became the subservicer of the loan in October 2006, they began sending Midland

letters they considered "Qualified Written Requests" ("QWR"s), asking about late fees and

other matters regarding the 1999 loan. (ECF #47). Plaintiffs allege they mailed 20 QWRs to

"Midland's QWR address" between December 12, 2006 and November 5, 2008. (Id. at ¶¶ 6-

25.)[3] Midfirst states that Plaintiffs defaulted on the loan sometime in  June 2008. (ECF #50, p.

4). Midland, the mortgage servicer, mailed Plaintiffs "Notice of Default" letters in July and

August of 2008 indicating the amount due on the loan and asking Plaintiffs to contact Midland

about the default.  (Id.)  In October of 2008, Midland informed Plaintiffs that Midfirst intended

to begin foreclosure proceedings. (Id.)

On December 12, 2008, MidFirst took an assignment of the Plaintiffs' mortgage and the

filed the foreclosure action on December 31, 2008. (ECF #50-10; ECF #47-1, ¶17). Plaintiffs

filed for Chapter 13 bankruptcy protection on May 2, 2010, which was designated Case No. 10-

---

[2]     A certified copy of the original Note and an Allonge were attached to the lost
        note Affidavit. (See ECF #58-1).

[3]     The 21st alleged QWR was mailed to Midland on March 25, 2011 and was treated
        as a discovery request by the bankruptcy court and therefore the parties agreed it
        did not constitute a QWR. (ECF #51, p.6).

52107. (Id. at ¶35).[4]  Documents filed by Plaintiffs in this bankruptcy case list Defendant

Midland as holding a secured lien on both the property and arrearage fees in the amount of

$170,076.22. (Id. at ¶¶35-37).  The facts before this Court indicate that Plaintiffs currently

remain in default on this 1999 loan. (*See* ECF #47-1, ¶51.)

On March 17, 2011, Plaintiffs filed this adversary proceeding against Defendants in the

U.S. Bankruptcy Court of Akron. (ECF #1).  The parties exchanged discovery for

approximately three years, until February 5, 2014, when Defendants filed their Motion to

Withdraw Reference with the bankruptcy court.[5]  This Court granted Defendants' motion on

February 28, 2014. (ECF #3).  Plaintiffs filed an Amended Complaint on September 11, 2014

(ECF #47) and Defendants timely filed their Answer. (ECF #49).

Count I of Plaintiffs' Amended Complaint alleges that both Defendants violated the

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2601 *et seq*.  Later pleadings

indicate that Plaintiffs RESPA claims are only against Midland.[6]  Count II of the Amended

Complaint alleges that both Defendants violated the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§1692-92p *et seq*.

Plaintiffs filed a Motion for Partial Summary Judgment against Defendants on October

17, 2014. (ECF #52).  Plaintiffs argue that Defendants violated the FDCPA by misrepresenting

their status as the creditor when filing the foreclosure, and that they filed a false affidavit in

---

[4]     Plaintiffs first filed for bankruptcy on November 5, 2009 but the action was
        dismissed on April 7, 2010. (ECF #47-1, ¶31).

[5]     This Motion was unopposed by Plaintiffs.

[6]     See ECF #55, p. 2.

order to obtain the foreclosure. (Id. at ¶1.) On the same date, Midfirst filed a Motion for

Summary Judgment (ECF #50), arguing that Plaintiffs' claims are time-barred under §1692k(e)

of the FDCPA. Midland also filed its Motion for Summary Judgment on October 17, 2014,

arguing that some of Plaintiffs' claims are time-barred under §2614 of RESPA, and that they

are entitled to summary judgment as it relates to any remaining allegations of RESPA

violations. (ECF #51).[7]

## LAW AND ANALYSIS

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its motion,
> and identifying those portions of 'the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with affidavits,
> if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing* Fed. R.

Civ. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit.

*Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[7]    Although Midland did not originally address the FDCPA allegations in this
Motion for Summary Judgment, Midland later argued for summary judgment on
this claim in an opposition brief. (ECF #54). This matter is more fully addressed
in section II.B.2. of this opinion.

evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne. Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (*citing Celotex*, *supra* at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (*citing Anderson*, *supra* at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, *supra* at 249–50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995). Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the

-6-

> mere allegations or denials of the adverse party's pleading, but
> the adverse party's response, by affidavits or as otherwise provided
> in this rule, must set forth specific facts showing that there is a
> genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving

party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to

examine "[o]nly disputes over facts that might affect the outcome of the suit under governing

law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it

weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole

function is to determine whether there is a genuine factual issue for trial; this does not exist

unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial-whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." *Anderson*, *supra* at 250.

II.    ANALYSIS

The issues presented in this case, as well as the large number of motions and cross-

motions filed, dictate that this Court examine each Motion separately.

A.  Defendant Midfirst's Motion for Summary Judgment

Plaintiffs allege that Midfirst violated the FDCPA by misrepresenting their status as the

creditor when filing the 2008 foreclosure, and that they filed a false affidavit in order to obtain

-7-

the foreclosure. (ECF #47, §28-29). While Plaintiffs do not specify which section of the FDCPA was violated by Midland, the general purpose of this statute is set forth in Section 1692e, which prohibits a debt collector from using false, deceptive or misleading representation or means in connection with the collection of a debt. 15 U.S.C. §1692e, *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F.Supp.2d 914 (N.D.Ohio 2009).

Midfirst argues that it is entitled to summary judgment because the allegations set forth in Plaintiffs' Complaint are time-barred under the FDCPA. That statute provides, in relevant part:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States [D]istrict [C]ourt without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs. *See* 15 U.S.C. §1692(k).

In this case, Plaintiffs filed the current Chapter 13 action on May 2, 2010. Filing a bankruptcy petition suspends a limitations period if the petition is filed before the period has run. 11 U.S.C. 108(a)(1). Therefore, any allegations of FDCPA violations made before May 2, 2009 may be time-barred under §1692(k).

A review of the facts presented by the parties shows that there are no relevant events that occurred outside of this statutory limitations date relating to Midfirst. The parties have stipulated that Midfirst filed its foreclosure complaint on December 31, 2008. (ECF #47-1, ¶ 17). The Affidavit containing the alleged false statements, executed by Midfirst employee Melissa Poage, was filed as an exhibit in the foreclosure matter on February 13, 2009. (ECF #27-4). There is no evidence to show any actionable statement or event that occurred prior to May 2, 2009 that could have conceivably violated the FDCPA and therefore, Plaintiffs' claims

-8-

are time-barred as per §1692(k) of the FDCPA.

Plaintiffs attempt to avoid the one-year statute of limitations in this case by arguing that the doctrine of equitable tolling should apply, based upon two arguments: first, that "material facts were concealed;" and second, that because the state-court action remains open, the violations are "continuing and ongoing." (See ECF #55, p.5). This Court finds that the Plaintiff is unable to meet the rigorous pleading requirements necessary to justify the imposition of equitable tolling on either ground. *See Jester v. CitiMortgage*, No. 1:13CV1926, 2014 WL 3547183, (N.D.Ohio July 16, 2014).

First, the Sixth Circuit has not ruled on whether equitable tolling applies to claims under the FDCPA. *See Turner v. Lerner, Sampson & Rothfuss*, 776 F.Supp.2d 498 (N.D. Ohio 2011). That is not to say that such principles have not been applied in prior FDCPA cases, however, it is rarely used and "available only in compelling circumstances which justify a departure from established procedures." *See Id.* at 504 (citations omitted). Furthermore, given the strong policy preference in favor of statutes of limitations, Plaintiffs bear the burden of persuading the Court that they are entitled to equitable tolling. *Id.*

Plaintiffs attempt to toll the statute of limitations by arguing that Midfirst misrepresented itself as the holder of the note when it filed for foreclosure, and that Plaintiffs didn't learn of that fact until 2013. (ECF #60, p.2). While it is true that fraudulent concealment is one of the extraordinary circumstances under which courts have chosen to equitably toll statutes of limitations, Plaintiffs have not persuaded this Court to apply that principle herein.

This Circuit has held that a plaintiff who invokes the doctrine of fraudulent concealment will be "held to stringent rules of pleading and evidence," and "conclusory

-9-

allegations of fraudulent concealment are not sufficient...and in accordance with Rule 9(b), plaintiffs must plead with particularity any fraudulent conduct which would justify equitable tolling. *Pinney Dock and Transport Co. V. Penn Cent. Corp.*, 838 F.2d 1445, 1465(6th Cir. 1988).

To establish equitable tolling by fraudulent concealment, plaintiffs must allege and establish that (1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitation period; and 3) until discovery of the cause of action, plaintiffs exercised due diligence in trying to find out about the cause of action. *Id.* at 1465.

Plaintiffs Amended Complaint does not allege fraudulent concealment, nor do Plaintiffs specifically argue the aforementioned elements in subsequent motions. Plaintiffs merely restate their allegation that Midfirst misrepresented that it had possession of the promissory note when it filed the Affidavit executed by Midfirst employee Melissa Poage on February 13, 2009 (ECF # 27-4) and that Midfirst used it as a basis to improperly sue the Plaintiffs in the foreclosure action. (ECF #55, p.4).

This district has held repeatedly that the plain language of §1692k(d) provides that the statute of limitations begins to run at the moment the alleged violation occurs, without regard to when the plaintiff gained knowledge of the cause of action. *Ball v. Ocwen Loan Servicing, LLC.* 2012 WL 1745479, (N.D.Ohio 2012) at *3,(*citing Whittiker, supra* at 944). It is clear that a plaintiff bears the ultimate burden of proving each of the three elements of fraudulent concealment by a preponderance of the evidence, yet Plaintiffs failed to do so in this case. *See Pinney Dock, supra.*

-10-

Even if this Court were to adopt Plaintiffs' argument that Midfirst misrepresented its right to file foreclosure on Plaintiffs' loan, which it does not, Plaintiffs' claims remain time-barred according to case law in this District.  In *McNerney v. Mortgage Electronic Registration Systems, Inc.*,[8] the Court decided that equitable tolling could not save a time-barred claim where a plaintiff alleged that the mortgage company filed a foreclosure action purporting to be the owner and holder of a promissory note it actually never owned or held, and plaintiff only discovered this fact years later. *Id.* at *5-6. *See also Popov v. Litton Loan Servicing, LP.*, No. 1:12CV169, 2012 WL 5364273 (N.D.Ohio Oct. 30, 2012)(finding plaintiff's FDCPA claim time-barred despite a dispute over whether defendant owned plaintiff's note).  Therefore, this Court finds no basis upon which to apply the doctrine of equitable tolling to Plaintiffs' claims based upon the alleged misrepresentation.

Secondly, the Plaintiffs' argument that the state-court action remained open and tolled the time period under the "continuing violation" theory is unpersuasive. (See ECF #52, p. 6).[9] Specifically, Plaintiffs argue that documents filed or exchanged in the bankruptcy matter (i.e. an amended proof of claim filed in March of 2014) warrants equitable tolling of the limitations period.(ECF #55, p. 5).  This argument will not revive Plaintiffs' time-barred claims.

First, this Circuit has never applied the continuing-violation doctrine to FDCPA claims, even when asked as recently as 2014 to do so. *See Slorp v. Lerner, Sampson & Rothfuss,*587 Fed.Appx. 249, 258 (6th Cir. 2014).  This fact does not change merely because Plaintiffs

---

[8]     No. 09CV2625, 2010 WL 3222044 (N.D.Ohio 2010).

[9]     Plaintiffs seemingly abandon this argument in later motions, acknowledging that the Sixth Circuit has held that the continuing violation theory does not apply. (ECF #61 p. 3.)

-11-

misinterpret and improperly quote decisions in recent opinions. *See, e.g.*, ECF #55 p.3. In addition, this Court has ruled repeatedly that merely "maintaining a lawsuit (as distinct from instituting one) is not, in and of itself, a continuing violation" *McNerney, supra,* at *6; *see also Ball, supra* at *5. Moreover, this Court has ruled that new communications concerning an old, ongoing claim do not start a new statute of limitations period in FDCPA cases. *See Michalak v. LVNV Funding, LLC.*, No. 1:13CV2489, 2014 WL 1775496 (N.D.Ohio April 23, 2014) at *2.

Therefore, since the alleged violations of the FDCPA by Midfirst occurred before the statute of limitations expired in this case on May 2, 2009, and no basis for equitably tolling the claims exist, Midfirst's Motion for Summary Judgment is GRANTED and Plaintiff's Partial Motion for Summary Judgment is DENIED.

      B.     Midland's Motion for Summary Judgment

          1.     Alleged RESPA Violations

Plaintiffs' Amended Complaint claims that Midland violated RESPA when it failed to adequately respond, acknowledge or investigate matters addressed in Plaintiffs' QWRs. (ECF #47, ¶33.) Plaintiffs allege that Midland's failure led to the "improper foreclosure" at issue in this case. (Id. at ¶34.)

Midland Mortgage Company filed a Motion for Summary Judgment having adopted all of the facts presented by Midfirst and outlined previously herein. (ECF #51, p. 1). Midland argues that it is entitled to judgment for two reasons: some of Plaintiffs' claims are time-barred, and that Midland is entitled to judgment as a matter of law for the remaining RESPA claims.

RESPA was enacted "in part to provide more effective advance disclosure to home buyers and sellers of settlement costs, and in response to abusive practices in the real estate

settlement process. 12 U.S.C. §2605, *Pike v. Bank of America, N.A.*, No. 1:14CV2529, 2015 WL 3824390 (N.D.Ohio June 19, 2015)(*citing Mellentine v. Ameriquest Mortg. Co.*, 515 Fed Appx. 419, 424 (6th Cir. Mich.2013)(quotations omitted). Section 2605(e), entitled "duty of loan servicer to respond to borrower inquiries," imposes certain duties on entities servicing federally related mortgages. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C.S. §2609] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3).

Pursuant to 12 U.S.C. §2605(e), a consumer may send a QWR to a loan servicer, requesting certain types of information related to the servicing of the loan. Upon receipt of a QWR, the loan servicer must provide a written response acknowledging receipt of the QWR within five days. 12 U.S.C. 2605(e)(1)(A). During the events at issue in this matter, the loan servicer was obligated to provide an answer sufficient to satisfy the requirements of 2605(e) within 60 days. 12 U.S.C. §2605(e)(2)(2009).

It has already been established that the parties agree Midland became the sub-servicer of Plaintiffs' loan when Midfirst transferred the servicing rights on October 26, 2006. (See, e.g. ECF #47, 47-1). Plaintiffs Amended Complaint alleges that they sent 21 QWRs to "Midland's QWR address" from December 12, 2006 through November 5, 2008, and that Midland "failed to adequately respond" to each QWR at issue. (ECF #47, ¶¶ 6-25.)[10]

---

[10]    An additional alleged QWR was mailed to Midland on March 25, 2011 and was treated as a discovery request by the bankruptcy court and therefore the parties agreed it did not constitute a QWR. (ECF #51, p.6).

Midland moves for summary judgment on the first two QWRs, dated December 12, 2006 and January 27, 2007,[11] arguing that they are time-barred under §2614 of RESPA, which provides a three-year statute of limitations period for claims based upon the alleged failure of a mortgage servicer to respond to a QWR. Plaintiffs filed their bankruptcy petition on May 2, 2010, which suspended the limitations period. 11 U.S.C. §108(a)(1). Therefore, when calculating the three-year statute of limitations plus the 60 business day response time provided by RESPA, both parties have agreed that any QWR allegedly mailed to Midland prior to February 7, 2007 is beyond the limitations period.[12]

Plaintiffs have conceded that "any letter dated prior to February 7, 2007 is outside the statute of limitations." (ECF #56, pp. 1-2.) However, Plaintiffs attempt to avoid the limitations period by arguing that their claims are being "raised in recoupment" and being used to show a "pattern or practice" of Midland's failure to respond to QWRs. (*Id.*) These arguments are futile. First, there is no recoupment exemption within RESPA that applies to the facts herein. *See, e.g. In re Wentz*, 393 B.R. 545 (S.D.Ohio Sept. 2, 2008). Furthermore, Plaintiffs make no attempt to present the necessary evidence to support the allegation of any "pattern or practice" by Midland relating to QWRs. 12 U.S.C. §2605(f)(1). *See also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013)(finding in part that plaintiff's "pattern and practice" claim failed absent evidence from other borrowers). Therefore, allegations regarding the first two QWRs are time-barred.

---

[11]    ECF #47, ¶¶6 and 7.

[12]    See ECF #56, p. 1 and ECF #51, p. 4.

This Court will now address the five alleged QWRs[13] that Plaintiffs concede they mailed to Midland at various addresses in Oklahoma and Florida - and not the designated QWR address specifically provided by Midland.  (See ECF #47-1, ¶¶40-44; ECF #51 p. 4).[14]  The Sixth Circuit has not yet decided whether a QWR must be mailed to a separate "QWR address" when a servicer establishes such an address.  However, other courts within the Sixth Circuit have held that "the response obligation under RESPA is only triggered when the QWR is sent to the designated address." *See, e.g. Jestes v. Saxon Mortg. Servs.*, 2:11CV59, 2014 WL 1847806 (M.D.Tenn. May 8, 2014) at *6.  In other words, when a QWR address is established, any letter mailed to another address cannot be considered a QWR. *See, e.g., Moody v. CitiMortgage, Inc.*, 32 F.Supp.2d 869 (W.D. Mich 2014); *In re Patrick*, No. 13-61661, 2014 WL 7338929, (Bankr.N.D.Ohio Dec.22, 2014).  Therefore, the five letters Plaintiffs sent to Midland from July 17, 2008 through November 5, 2008 do not qualify as QWRs and Midland had no duty to respond to such letters under RESPA. *Moody, supra* at 875.  For these reasons, Midland is entitled to judgment as a matter of law regarding these allegations of RESPA violations.

Finally, this Court will address the 14 alleged QWRs Plaintiffs claim they mailed to Midland from February 26, 2007 through June 11, 2008. (ECF #47, ¶¶8-21).  In fact, two of these alleged QWRs (dated June 13, 2007 and September 28, 2007) were not mailed to Midland's QWR address and therefore, do not constitute QWRs for the reasons already

---

[13]     ECF #47, ¶¶22-25.

[14]      Midland does not admit that it received these five letters at any Midland business address.

outlined.[15] (See ECF #56-3, pp. 12 and 20.) As for the remaining 11 alleged QWRs, Plaintiffs "concede that the letters identified in Defendant's motion for summary judgment were not addressed to the designated QWR address." (ECF #56, p. 5). That being the case, this Court has already ruled that such letters would not constitute QWRs under RESPA, and therefore, Midland cannot be found to have violated the statute.

However, a generous reading of Plaintiffs' concession could find that Plaintiffs were referring to only the five letters the parties had previously stipulated were mailed to the wrong address. (See ECF #47-1, ¶¶40-44). Even so, Midland's correspondence tracking system does not indicate that it received any QWRs from Plaintiffs during this time period. (ECF #56-1). The documents tracked by Midland are labeled "payments-letter only" or "posting of payment."[16] Plaintiffs have not set forth evidence sufficient to prove that the remaining alleged QWRs were ever received by Midland - but rather - ask this Court to convert letters from Midland that they previously referred to a "generic, automated, non-useful robo-letters" into "inadequate QWR responses" in violation of RESPA. (ECF #56-3 pp. 5-7, ECF #56 pp. 3-4). This Court finds no factual or legal basis for this, and therefore, Midland is entitled to judgment as a matter of law as to these alleged QWRs.

2.    Alleged FDCPA Violations

We now turn to the remaining claim brought by Plaintiffs against Midland under the

---

[15]    Paragraph 14 of the Amended Complaint refers to a letter dated June 18, 2007, which does not exist in the record and therefore this Court will infer, based upon the evidence, that Plaintiffs are referring to the letter dated June 13, 2007 at ECF #56-3, p.12).

[16]    This system did identify the "Form QWR" that was received March 25, 2011 that has already been discussed herein.

FDCPA. Plaintiffs Amended Complaint alleges that both Defendants are debt collectors as defined by the FDCPA and that Defendants' actions violated the FDCPA. (ECF #47 ¶¶37 and 38). While Plaintiffs did not focus on Midland's actions throughout much of their Partial Motion for Summary Judgment (ECF #52), Plaintiffs clearly addressed their FDCPA claims against Midland through subsequent Motion practice. (See ECF #56 and 61.) Similarly, Midland was able to address the FDCPA allegations in its Memorandum in Opposition to Plaintiffs Partial Motion for Summary Judgment. (ECF #54). Midland also requested summary judgment on this issue within this Memorandum. (Id. at p. 7.) Therefore, this issue is fully briefed before this Court.

That being said, this Court finds that Plaintiffs' FDCPA claims against Midland are time-barred pursuant to the one year statute of limitations in §1692k(d) of the statute. It has already been established herein that any claim based on statements or actions prior to May 9, 2009 are time-barred. Plaintiffs have presented no factual evidence or allegation of any action or correspondence by Midland after May 9, 2009 that arguably violate the FDCPA. This Court further finds that Plaintiffs have not set forth adequate factual or legal support to justify equitably tolling the statute of limitations, for reasons already outlined herein.

Therefore, this Court finds that Midland is entitled to judgment as a matter of law as it relates to Plaintiffs allegations of FDCPA violations.

III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF #52) is DENIED; Defendant Midfirst Bank's Motion for Summary Judgment (ECF #50) is GRANTED; and Defendant Midland Mortgage Company's Motion for Summary Judgment

(ECF #51) is GRANTED.  Furthermore, having decided that Plaintiffs and Midland had fully briefed the FDCPA issues, this Court finds that Midland is entitled to judgment as a matter of law as to Plaintiff's FDCPA claims against Midland.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: *September 1, 2015*

-18-